NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

v.

ROGER PERRY RIESTER,
*Appellant*.

No. 1 CA-CR 19-0524

FILED 8-27-2020

Appeal from the Superior Court in Maricopa County
No.  CR2019-106627-001
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge D. Steven Williams joined.

_____

**W E I N Z W E I G**, Judge:

¶1        Roger Perry Riester appeals his convictions and sentences for three counts of aggravated assault.  He argues the superior court erred by failing to instruct the jury on defensive display of a firearm.  Finding no error, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Riester called police from his house to report that someone had followed him "all the way to his home," adding that he just encountered "five other people wanting to kill him."  Police officers responded and left after finding no evidence that Riester was being followed.  Unsatisfied, Riester later drove to police headquarters in downtown Phoenix, reasoning he might draw out "the people [who] were following him."

¶3        Riester arrived at police headquarters after dark.  A police officer and volunteer sat at the front desk.  Riester appeared at the entrance holding his .357 Magnum Revolver.  The officer told Riester over an intercom that firearms were not allowed inside the building.  Riester placed his firearm on the ground and was admitted.  He repeated to the officer that he was being pursued by people with bad intentions.  He was described as "unnerved" and "moving back and forth."  The officer concluded that Riester was a "paranoid mess" and told him to return home.  Riester abruptly exited but did not leave.  He instead paced outside the entrance for twenty minutes, crouching behind planters whenever cars drove by.

¶4        Around this time, three unarmed, plainclothes officers were returning on foot to headquarters.  As they approached the front entrance, Riester drew his firearm, aimed at the officers and warned to "[g]et back or I'll fucking shoot you."  The officers darted for cover and escaped.

¶5        Riester called 9-1-1 from his cell phone, insisting that a "bunch" of people were "chas[ing] [him] all around town" in "several different vehicles."  He was arrested without further incident.  Officers

2

found the firearm in a nearby planter and two speedloaders (to quickly reload the firearm) in Riester's pockets.

**¶6**         A grand jury indicted Riester on three counts of aggravated assault, class 3 dangerous felonies, and one count of misconduct involving weapons, a class 4 felony.  *See* A.R.S. §§ 13-105(13); -1203(A)(2); -1204(A)(2), (E); -3102(A)(4), (M).  Riester pleaded not guilty to all charges.  Later, the State successfully moved to dismiss the misconduct involving weapons charge.

**¶7**         A five-day jury trial followed.  Riester defended on the grounds that he feared for his life and did not intend to harm the officers.  The State presented five witnesses.  Riester unsuccessfully moved for a Rule 20 judgment of acquittal at the close of the State's case.  Although he did not testify, Riester called three witnesses.  And, at issue here, he also requested a standard jury instruction on the justification of defensive display of a firearm.  *See* A.R.S. § 13-421(A), (D)(2).  The superior court denied the request.

**¶8**         The jury convicted Riester on three counts of aggravated assault and found they were dangerous offenses.  After denying Riester's post-trial motions, the court sentenced him to concurrent five-year prison terms for each conviction, minus 207 days of pre-incarceration credit.  *See* A.R.S. § 13-704(A).  Riester timely appealed.  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031 and -4033(A)(1).

## DISCUSSION

**¶9**         Riester argues the superior court erroneously refused to provide the standard jury instruction to justify the defensive display of a firearm.  "Although we normally review denial of a jury instruction for an abuse of discretion, 'we independently assess whether the evidence supported a justification instruction, because that is a question of law and involves no discretionary factual determination.'"  *State v. Pina-Barajas*, 244 Ariz. 106, 108, ¶ 4 (App. 2018) (quoting *State v. Almeida*, 238 Ariz. 77, 80, ¶ 9 (App. 2015)).  A party is entitled to a jury instruction on any theory of the case that the evidence reasonably supports.  *State v. Bolton*, 182 Ariz. 290, 309 (1995).

**¶10**         A person may defensively display a firearm against another "when and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the use or attempted use of unlawful physical force or deadly physical force."  A.R.S.

§ 13-421(A). This instruction is provided when the record contains the "slightest evidence" of self-defense, a "low standard that has been defined in the self-defense context as 'a hostile demonstration, which may be reasonably regarded as placing the accused apparently in imminent danger of losing h[is] life or sustaining great bodily harm.'" *State v. King*, 225 Ariz. 87, 90, ¶ 15 (2010) (quoting *State v. Lujan*, 136 Ariz. 102, 104 (1983)) (alteration added). *See also State v. Carson*, 243 Ariz. 463, 467, ¶ 19 (2018) ("If the defendant shows evidence that he acted in response to a 'hostile demonstration,' he is entitled to a self-defense jury instruction.").

**¶11** Riester has shown no error. The record does not support this justification instruction, even when viewed in the light most favorable to Riester. *See State v. Hussain*, 189 Ariz. 336, 337 (App. 1997) (the superior court does not err in refusing to give an instruction that does not fit the facts of the case). The evidence does not show that Riester "reasonably regarded" three approaching unarmed, plainclothes officers as an "imminent danger" to his life or safety. *King*, 225 Ariz. at 90, ¶ 15; A.R.S. § 13-421(A).

**¶12** Riester counters with his subjective belief that the officers were following him, arguing that an instruction was proper on that basis alone. Riester ignores, however, that Arizona's self-defense statutes "use objective standards that depend on the beliefs of a 'reasonable person' in the defendant's circumstances rather than the defendant's *subjective beliefs*." *Carson*, 243 Ariz. at 465, ¶ 9 (emphasis added); *see also* A.R.S. § 13-405(A)(2) (using "reasonable person" standard).

## CONCLUSION

**¶13** We affirm Riester's convictions and sentences.

