IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**NICOLAS LUVIANO,**
*Appellant.*

No. CR-21-0329-PR
Filed June 6, 2023

Appeal from the Superior Court in Pima County
The Honorable Kimberly A. Harris Ortiz, Judge
No. CR20181014-001
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
252 Ariz. 162 (App. 2021)
**VACATED IN PART**

COUNSEL:

Kristin K. Mayes, Arizona Attorney General, Joshua Bendor, Solicitor General, Mariette S. Ambri (argued), Assistant Attorney General, Criminal Appeals Section, Tucson, Attorneys for State of Arizona

Megan Page, Pima County Public Defender, David J. Euchner (argued), Deputy Public Defender, Tucson, Attorneys for Nicolas Luviano

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, LOPEZ, KING, and PELANDER (RETIRED) joined.[*]

JUSTICE BEENE, Opinion of the Court:

¶1 Nicolas Luviano was convicted of felony resisting arrest and other offenses. Luviano argues that because the resisting arrest statute describes multiple crimes, the jury was improperly instructed that the offense constituted a single crime, depriving him of his right to a unanimous verdict. *See* Ariz. Const. art. 2, § 23 (guaranteeing a criminal defendant the right to a unanimous jury verdict). For the following reasons, we hold that felony resisting arrest is a single unified offense.

## BACKGROUND

¶2 In February 2018, Arizona state troopers were conducting a stolen vehicle investigation. After observing Luviano load items into a stolen car, officers approached and attempted to apprehend him. Luviano ran when confronted, and a foot pursuit ensued. As he tried to climb over a fence, an officer grabbed him. Luviano then struggled with several officers while they tried to handcuff him. He was eventually subdued and arrested.

¶3 Luviano was charged with felony resisting arrest under A.R.S. § 13-2508(A)(2), along with other offenses. At the close of the evidence, the trial judge instructed the jury, in relevant part, that the final element of resisting arrest is that "the means used by the defendant to prevent the arrest involved either the use or threat to use physical force or any other substantial risk of physical injury to either the peace officer or

---

[*] Justice William G. Montgomery is recused from this matter. Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

another." The jury found Luviano guilty on all counts and the trial court sentenced him to a lengthy prison term.

¶4 On appeal, Luviano challenged the trial court's instruction regarding the elements of resisting arrest, arguing that § 13-2508's subsections enumerate separate offenses: (A)(1) requiring the use of physical force, and (A)(2) requiring the use of means other than physical force "creating a substantial risk of causing physical injury." He contended that the court's jury instruction improperly conflated these two subsections.

¶5 In rejecting Luviano's argument, the court of appeals concluded:

> The language of § 13-2508(A)(1) and (A)(2) plainly and unambiguously identifies felony resisting arrest as a unitary offense, setting out the means by which the offense may be committed. Subsection (A)(1) identifies "[u]sing or threatening to use physical force against the peace officer or another" as one means of committing the offense, and subsection (A)(2) proscribes "[u]sing any other means" that create "a substantial risk of causing physical injury to the peace officer or another."

*State v. Luviano*, 252 Ariz. 162, 167 ¶ 12 (App. 2021) (alterations in original). The court added that even if the statutory language was not plain and unambiguous, applying the four-part analysis set forth in *State v. West*, 238 Ariz. 482, 489–90 ¶ 20 (App. 2015), to determine whether a statute created one or more offenses would similarly result in finding that felony resisting arrest is a unitary offense. *Luviano*, 252 Ariz. at 167 ¶¶ 12–13.

¶6 We granted review to determine the applicable analysis in deciding whether a statute describes a single unified offense or separate offenses, a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

**DISCUSSION**

¶7        This case presents an issue of statutory interpretation, which we review de novo. *Am. C.L. Union of Ariz. v. Ariz. Dep't of Child Safety*, 251 Ariz. 458, 461 ¶ 11 (2021). We also review de novo whether jury instructions properly state the law. *State v. Orendain*, 188 Ariz. 54, 56 (1997). Because Luviano failed to object to the instruction at trial, we will affirm absent a showing of fundamental, prejudicial error. *See State v. Johnson*, 247 Ariz. 166, 185 ¶ 41 (2019).

**I.**

¶8        The parties disagree on whether § 13-2508(A)(1) and (A)(2) identify a single unified offense or separate offenses. Section 13-2508(A)–(B) states:

> A. A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by:
> 1. Using or threatening to use physical force against the peace officer or another.
> 2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.
> 3. Engaging in passive resistance.
> B. Resisting arrest pursuant to subsection A, paragraph 1 or 2 of this section is a class 6 felony. Resisting arrest pursuant to subsection A, paragraph 3 of this section is a class 1 misdemeanor.

The State argues that § 13-2508(A)(1) and (A)(2) provide alternative means of committing the same offense.[1]    However, Luviano asserts that

---

[1] Section 13-2508(A)(3) is not at issue in this case. References to § 13-2508 refer only to subsections (A)(1) and (A)(2).

subsections (A)(1) and (A)(2) describe separate crimes. Therefore, he contends that the trial court's instruction combining the two subsections into one crime violated his right to a unanimous verdict and constituted fundamental, prejudicial error. *See* Ariz. Const. art. 2, § 23.

**A.**

**¶9** In Arizona, criminal statutes can contain multiple descriptions of proscribed conduct. *See State v. Paredes-Solano*, 223 Ariz. 284, 288 ¶ 9 (App. 2009). There are two classes of criminal statutes relevant to the unanimous jury analysis. *See id.* The first class contains what are known as "alternative means" statutes that describe a single unified offense. An alternative means statute "defines a specific crime and provides ways in which the crime may be committed." *Id.* (quoting *State v. Dixon*, 127 Ariz. 554, 561 (App. 1980)). The second class contains statutes that "set forth several distinctive acts and make the commission of each a separate crime." *Id.* This other class of criminal statutes lists "elements in the alternative" and, therefore, statutes in this class define multiple crimes. *Mathis v. United States*, 579 U.S. 500, 505 (2016).

**¶10** To determine whether § 13-2508 provides for a single unified offense or separate offenses, we look to its language. "Our task in statutory construction is to effectuate the text if it is clear and unambiguous." *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19 ¶ 9 (2018). In interpreting a statutory provision, we give words "their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended." *Ariz. ex. rel. Brnovich v. Maricopa Cnty. Cmty. Coll. Dist. Bd.*, 243 Ariz. 539, 541 ¶ 7 (2018) (quoting *State v. Miller*, 100 Ariz. 288, 296 (1966)). Accordingly, we "interpret statutory language in view of the entire text" and consider the context. *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019). "Ambiguity arises when the language is reasonably susceptible to differing interpretations." *Romero-Millan v. Barr*, 253 Ariz. 24, 27 ¶ 13 (2022). When a statute is ambiguous, "we consult 'secondary interpretation methods, such as the statute's subject matter, historical background, effect and consequences, and spirit and purpose.'" *Redgrave v. Ducey*, 251 Ariz. 451, 457 ¶ 22 (2021) (quoting *Rosas v. Ariz. Dep't of Econ. Sec.*, 249 Ariz. 26, 28 ¶ 13

(2020)). We must determine whether § 13-2508 lists multiple elements or instead enumerates different factual means of committing a single offense.

**¶11** We conclude that § 13-2508 is ambiguous because it may be reasonably read as setting forth either a single unified offense or distinct crimes. We agree with the court of appeals that § 13-2508 may be reasonably read as providing for:

> a unitary offense, setting out the means by which the offense may be committed. Subsection (A)(1) identifies "[u]sing or threatening to use physical force against the peace officer or another" as one means of committing the offense, and subsection (A)(2) proscribes "[u]sing any other means" that create "a substantial risk of causing physical injury to the peace officer or another."

*Luviano*, 252 Ariz. at 167 ¶ 12 (alterations in original). Conversely, § 13-2508 may also be reasonably read as a statute that defines separate offenses. Subsection (A)(1) proscribes the use of physical force against an officer when effecting an arrest, while subsection (A)(2) prohibits use of "any other means" that creates a substantial risk of causing physical injury to an officer while making an arrest. § 13-2508(A)(1)–(2). The "other means" required under subsection (A)(2) could rationally be interpreted as describing different acts than the ones set forth in subsection (A)(1). This distinction may be reasonably read to make each subsection a separate offense.

**B.**

**¶12** Because the language of § 13-2508 is reasonably susceptible to two differing interpretations and is therefore ambiguous, we must turn to secondary methods of statutory construction to ascertain its meaning. Employing those methods, we conclude that § 13-2508 sets forth a single unified offense.

**¶13** The statute's context, structure, and subject matter support this conclusion. *See Advanced Prop. Tax Liens, Inc. v. Sherman*, 227 Ariz. 528, 531 ¶ 14 (App. 2011) (considering "the language and sentence structure" in

interpreting a statute to "harmonize" its provisions). Notably, the context and structure of the statute connect both subsections in the same sentence, thus suggesting different means by which one might commit the offense of felony resisting arrest. Subsection (A)(1) criminalizes "[u]sing or threatening to use physical force against the peace officer or another," while subsection (A)(2) likewise proscribes "[u]sing *any other means* creating a substantial risk of causing physical injury to the peace officer or another." (Emphasis added.) The use of the phrase "any other means" joins the subsections and indicates an intent to provide alternative descriptions for the same material facts. *Cf. State v. Freeney*, 223 Ariz. 110, 113 ¶ 16 (2009) ("When the elements of one offense materially differ from those of another—even if the two are defined in subsections of the same statute—they are distinct and separate crimes."); *State v. Woody*, 108 Ariz. 284, 287 (1972) ("An offense which requires different evidence or elements than the principal charge is a separate offense . . . .").

¶14 Section 13-2508's subject matter also supports our conclusion that subsections (A)(1) and (A)(2) are alternative means of committing one offense. The distinction between statutes that define single unified offenses and those that define multiple offenses "often relies on the harm resulting from the crime." *State v. O'Laughlin*, 239 Ariz. 398, 401 ¶ 7 (App. 2016). Here, both subsections share the same subject matter, in that they both provide alternate means to address the same primary harm, namely, interfering with a peace officer's authority to place an individual under arrest. Like other statutes that have been interpreted to create only one crime, both subsections also require proof of a particular harm: the defendant used physical force or any other means that created a substantial risk of physical injury to a peace officer attempting to effectuate an arrest. *See Paredes-Solano*, 223 Ariz. at 289–90 ¶ 14 (noting that Arizona's first degree murder, kidnapping, and theft statutes each "describe a single offense despite providing . . . different ways to commit the offense" and "each of these statutes focuses on a single harm to the victim"). Because the primary harm in resisting arrest is singular, the statutory alternatives in subsections (A)(1) and (A)(2) are alternative ways of committing a unified offense.

¶15　　　　Finally, the act of resisting arrest generally constitutes a single event and thereby represents a single offense. This conclusion is consistent with our decision in *State v. Jurden*, 239 Ariz. 526 (2016), where we determined that "regardless of the number of officers involved, § 13-2508 only permits one conviction when a defendant resists an arrest in the course of a single, continuous event." *Id.* at 527–28 ¶ 1. Resisting arrest is considered a single event for double jeopardy purposes. *Id.* at 532 ¶ 26. It would be incongruous to interpret subsections (A)(1) and (A)(2) as separate crimes when determining whether the unanimous jury provision was violated.

## II.

¶16　　　　When conducting this analysis, however, we must also construe § 13-2508 against the backdrop of the Sixth Amendment. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 247–51 (2012) (explaining that the constitutional-doubt canon rests "upon a judicial policy of not interpreting ambiguous statutes to flirt with constitutionality, thereby minimizing judicial conflicts with the legislature"); *see also State v. Green*, 248 Ariz. 133, 135 ¶ 8 (2020) (noting that the plain text of a statute controls unless a constitutional violation results). In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court held that, under the Sixth Amendment, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Later, the Supreme Court held that a prior state law conviction for an alternate means crime does not qualify as a generic form of a predicate violent felony offense for federal sentencing enhancement purposes if an element of the prior state crime is broader than an element of the generic offense. *Mathis*, 579 U.S. at 503. The Supreme Court further emphasized that "[i]f statutory alternatives carry different punishments, then under *Apprendi* they must be elements," not alternative means of committing a single offense. *Id.* at 518 (citing *Apprendi*, 530 U.S. at 490).

¶17　　　　An important distinction exists between the Sixth Amendment analysis in *Mathis* and our Fifth Amendment analysis in *State v. Carter*, 249 Ariz. 312 (2020). In *Carter*, we considered whether the

defendant's "convictions and subsequent sentences constitute[d] multiple punishments for the same offense" in violation of the Fifth Amendment's Double Jeopardy Clause. *Id*. at 314 ¶ 1. We concluded that "[t]o determine whether two distinct offenses charged under different statutes constitute the same offense, we apply *Blockburger*'s same-elements test, i.e. 'whether each provision requires proof of a fact which the other does not.'" *Id*. at 315 ¶ 9 (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). In rejecting the state's assertion that "an offense with a greater penalty cannot be a lesser-included offense of one with a lesser penalty," we reasoned that "it is the elements, not the penalty, that matter." *Id*. at 319–20 ¶¶ 25–26. This statement in *Carter* only relates to analyses of statutes under *Blockburger*'s same-elements test, not under the test from *Apprendi* the Supreme Court applied in *Mathis*.

¶18 Here, resisting arrest under either subsection (A)(1) or (A)(2) is a class six felony and provides for the same punishment. *See* § 13-2508(B). Accordingly, § 13-2508's similar statutory punishments indicate alternate ways of committing a single crime. *See Mathis*, 579 U.S. at 518 (reasoning that if a statute provides illustrative examples that could constitute a crime then those illustrative examples are means of commission). Therefore, our interpretation of § 13-2508 comports with the Sixth Amendment.

### III.

¶19 Although the court of appeals decided that "[t]he language of § 13-2508(A)(1) and (A)(2) plainly and unambiguously identifies felony resisting arrest as a unitary offense," it went on to analyze whether the statute provides a single unitary offense or separate crimes under the four-part test initially set forth in *Dixon*, 127 Ariz. at 561. *Luviano*, 252 Ariz. at 167 ¶¶ 12–13.[2] In analyzing whether a statute provides an alternative means

---

[2] The court of appeals cited *West*, 238 Ariz. at 489–90 ¶ 20, when discussing this test. While *West* is a more recent court of appeals case, the test first originated in *Dixon*, 127 Ariz. at 561. The *Dixon* court, without much analysis, adopted this test from Washington. *See id.* (citing *State v. Arndt*, 553 P.2d 1328 (Wash. 1976)).

for committing the same offense, the *Dixon* court held that consideration should be given to: (1) "[t]he title of the act," (2) "[w]hether there is a readily perceivable connection between the various acts set forth," (3) "[w]hether the acts are consistent with and not repugnant to each other," and (4) "[w]hether the acts may inhere in the same transaction." 127 Ariz. at 561.

**¶20**        Luviano correctly notes that this Court has not adopted the *Dixon* factors in determining whether a statute reflects a unitary offense or separate crimes, and we decline to do so here. The factors outlined in *Dixon* fail to provide meaningful assistance in determining the question presented here, because application of the factors nearly always results in finding that the questioned statute prescribes a single unified offense. *See State v. Manzanedo*, 210 Ariz. 292, 294 ¶¶ 7–9 (App. 2005) (applying *Dixon* in finding A.R.S. § 13-1207, which criminalizes a prisoner's assault with intent to incite to riot, is a single unified offense); *State v. Brown*, 217 Ariz. 617, 620–21 ¶ 10 (App. 2008) (applying *Dixon* in finding A.R.S. § 13-3408(A)(7), which prohibits transporting narcotic drugs for sale, is a single unified offense); *West*, 238 Ariz. at 490 ¶¶ 20–21 (applying *Dixon* in finding A.R.S. § 13-3623(A), proscribing child abuse, is a single unified offense). More importantly, employing *Dixon*'s analysis would be inconsistent with our duty to apply the principles of statutory interpretation, *see* Part I, in order to ascertain a statute's meaning. Accordingly, we disapprove of *Dixon* to the extent it is inconsistent with our analysis here.

## IV.

**¶21**        Because we find that § 13-2508(A)(1) and (A)(2) set forth a single unified offense, the jury instruction regarding this crime did not constitute error, much less fundamental error.[3] While we conclude that

---

[3] Luviano argued for the first time in his supplemental brief that this Court should recognize and apply the merger doctrine in this case. *See State v. Essman*, 98 Ariz. 228, 235 (1965) (explaining the merger doctrine), *invalidated by State v. Moore*, 222 Ariz. 1, 13–14 ¶¶ 57–63 (2009). Because this argument was not raised in the trial court or the court of appeals, it is waived, and we

Luviano's resisting arrest conviction was legally sufficient, the best practice moving forward when charging a single unified offense would be to specify the alternate ways the crime may be committed in the charging document. *See State v. Moore*, 222 Ariz. 1, 12 ¶ 51 (2009) (stating that due process requires that a defendant be given "notice of the specific charge" (quoting *Cole v. Arkansas*, 333 U.S. 196, 201 (1948))); *Pool v. Superior Court*, 139 Ariz. 98, 101 n.4 (1984) (emphasizing that "the indictment gave clear notice to the defendant that the crime alleged was a violation of *either or both*" subsections of a statute (emphasis added)). In addition, to safeguard this constitutional right, the trial court should include an interrogatory with the verdict forms where the jury could specify which offense was committed if the court is uncertain as to whether a statute provides alternative means of committing the same offense or is a multiple offense statute.[4]

## CONCLUSION

**¶22** Because felony resisting arrest is a single unified offense, Luviano's constitutional right to a unanimous jury was not violated, and the trial court did not err in giving the resisting arrest instruction. For the foregoing reasons, we vacate paragraphs 5–16 of the court of appeals' opinion and affirm Luviano's conviction and sentence for resisting arrest.

---

decline to address it. *See Est. of DeSela v. Prescott Unified Sch. Dist. No. 1*, 226 Ariz. 387, 389 ¶ 8 (2011).

[4] A defendant's right to notice of the specific charge or to be informed does not mandate either of these best practices, nor do these best practices confer additional rights. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . be informed of the nature and cause of the accusation."); Ariz. Const. art. 2, § 24 ("In criminal prosecutions, the accused shall have the right . . . to demand the nature and cause of the accusation against him, [and] to have a copy thereof . . . ."). These constitutional provisions provide only the floor, not the ceiling, of best practices when drafting charging documents.